UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JUAN EASON,<br>*Plaintiff*,<br><br>v.<br><br>KELLY R. QUINN, *et. al.*,<br>*Defendants*. | No. 3:19-cv-219 (VAB) |
|---|---|

## INITIAL REVIEW ORDER

Juan Eason, currently incarcerated at MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, and proceeding pro se, sued Connecticut Department of Correction ("DOC") officials for constitutional violations under 42 U.S.C. § 1983 in their individual and official capacities: Nurse Kelly R. Quinn, Nurse Henry Mushi, Nurse Mariam Grant, Dr. Omprakash Pillai, Nursing Supervisor Tawanna Furtick, and Dr. Monica Farinella (collectively "Defendants"). Complaint, ECF No. 1. Mr. Eason alleges violations of his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his serious medical needs, and seeks monetary, injunctive, and declaratory relief. *Id.* at ¶¶ 19–22.

For the following reasons, the Court **DISMISSES** the claims against Nurse Furtick.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

On April 5, 2018, while in the infirmary at MWCI, Mr. Eason allegedly informed Nurse Quinn of itching all over his body. Compl. ¶ 1. Mr. Eason had previously undergone knee replacement surgery at the University of Connecticut Hospital. *Id.* Nurse Quinn allegedly told Mr. Eason that she was not going to call the facility doctor "for some kind of itch that you are

1

faking just to get some attention from me." *Id.* at ¶ 2. When Nurse Quinn returned to work in the infirmary later than evening, Mr. Eason allegedly told her that his itch was worsening. *Id.* at ¶ 3. At that point, Nurse Quinn allegedly began cursing at Mr. Eason and told him to "stop it with the crying wolf," and allegedly said that he would not receive any medication. *Id.* at ¶ 4.

Mr. Eason allegedly later noticed that a rash was developing on his right thigh and requested to be evaluated by another staff member. Compl. ¶ 5. Nurse Mushi allegedly then came to the infirmary and Mr. Eason allegedly explained to him the nature of his medical issue. *Id.* However, Nurse Mushi allegedly refused to look at his rash and told him that he was not going to look at anything. *Id.*

Later that night, Nurse Grant allegedly came to the infirmary, and Mr. Eason allegedly tried to explain to her his medical issue. Compl. ¶ 6. Nurse Grant allegedly cut him off, explained that she had been briefed about his complaints, and told him not to "even try . . . with the fake B.S." *Id.*

After two hours, Mr. Eason allegedly was able to convince Nurse Grant that he needed medical attention. Compl. ¶ 7. Nurse Grant allegedly noticed the rash and called the facility doctor who gave Mr. Eason medication to stop the itching. *Id.*

The next morning, Mr. Eason allegedly had to seek medical attention again because he was allegedly covered in the rash from head to toe and was experiencing difficulty breathing because his throat was swollen. Compl. ¶ 8. Dr. Pillai, who was in charge of the infirmary, allegedly did not attempt to find the cause of the rash. *Id.* at ¶ 9. Mr. Eason also allegedly claims that he did not receive his pain medication as part of his post-operative care treatment plan. *Id.*

The treatment plan allegedly ordered by Mr. Eason's surgeon also provided for range of motion exercises to increase flexibility in his knee. Compl. ¶ 10. However, when Dr. Farinella

discharged Mr. Eason from the infirmary, she allegedly never completed a discharge plan which should have included range of motion exercises. *Id.* at ¶ 11. Mr. Eason allegedly filed a number of medical grievances regarding his inability to receive range of motion exercises. *Id.* at ¶¶ 12–14. On April 26, 2018, he allegedly was evaluated by Nurse Michaud, who informed him that, once a prisoner is discharged from the infirmary, he allegedly cannot return for range of motion exercises. *Id.* at ¶ 15.

DOC Administrative Directive 8.1(6)(L) provides that "[t]he contracted health services provider and DOC shall provide qualified therapists to provide physical therapy, occupational therapy and rehabilitation therapy to inmates in DOC facilities. Physical and occupational therapy shall be limited to services that assist the inmate to achieve and maintain self-care and improved functioning in activities of daily living." *Id.* at ¶ 16.

On March 29, 2018, the day after his knee replacement surgery, Dr. Pillai allegedly signed off on an order for Mr. Eason to receive range of motion exercises. *Id.* at ¶ 17. Mr. Eason, however, alleges that he never received this therapy. *Id.*

### B. Procedural History

On February 14, 2019, Mr Eason filed his Complaint, alleging constitutional violations by the Defendants. Compl. On the same day, Mr. Eason moved to for leave to proceed *in forma pauperis*, and Magistrate Judge William Garfinkel granted his motion. Motion for Leave to Proceed in forma paperis, ECF No. 2; Order, ECF No. 6.

## II. STANDARD OF REVIEW

A court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A.

3

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### III. DISCUSSION

Mr. Eason claims that the Defendants have acted with deliberate indifference to his serious medical needs, in violation of his Eighth Amendment protection against cruel and unusual punishment. The Court will permit his claim to proceed against all of the Defendants, except Nurse Furtick.

To state a claim for deliberate indifference to a serious medical need, Mr. Eason must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to

4

focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in original; internal quotations omitted).

Subjectively, the Defendants must have been actually aware of a substantial risk that Mr. Eason would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983; *see id.* at 280; nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Construing his allegations liberally, Mr. Eason has stated a plausible Eighth Amendment claim against defendants Quinn, Mushi, Grant and Pillai for refusing to provide him with immediate and adequate medical care for his rash on April 5 and 6, 2018. The Court will also permit his claim to proceed against Dr. Pillai and Dr. Farinella for failing to provide him with physical therapy as ordered by his hospital physician following his knee replacement surgery.

Mr. Eason has not, however, stated a plausible claim against Nurse Furtick. In the Second Circuit, "[i]t is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (finding that the doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). Mr. Eason has not alleged any facts showing Nurse Furtick's personal involvement in the alleged deprivation of medical care.

5

Rather, it appears Mr. Eason may be attempting to state a claim against Nurse Furtick based on her supervisory position in the DOC. A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). Yet, Mr. Eason has not alleged any facts against Nurse Furtick.

The Court therefore finds that the claim against her cannot proceed.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DISMISSES** the claims against Nurse Furtick. The Eighth Amendment may proceed against Nurse Quinn, Nurse Mushi, Nurse Grant, Dr. Pillai, and Dr. Farinella in their individual capacities for damages and in their official capacities for declaratory and injunctive relief.

The Court **ORDERS** the following:

(1) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this Order and to file a return of service within thirty (30) days from the date of this Order.

(2) The Clerk shall verify the current work addresses for Nurse Quinn, Nurse Mushi, Nurse Grant, Dr. Pillai, and Dr. Farinella with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The Clerk shall send a courtesy copy of the complaint to the DOC Office of Legal Affairs.

(4) Nurse Quinn, Nurse Mushi, Nurse Grant, Dr. Pillai, and Dr. Farinella shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, under Fed. R. Civ. P. 26–37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(7) Under Local Civil Rule 7(a), a nonmoving party must respond to a

dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Mr. Eason changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Mr. Eason must give notice of a new address even if he is incarcerated. He should write **"PLEASE NOTE MY NEW ADDRESS"** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Eason has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify defendants or defense counsel of his new address.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of April 2019.

                                            /s/ Victor A. Bolden
                                          VICTOR A. BOLDEN
                                          UNITED STATES DISTRICT JUDGE