## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JUAN EASON,
  *Plaintiff,*

   v.

NURSE QUINN, *et al*.,
  *Defendants.*

No. 3:19-cv-219 (VAB)

### RULING AND ORDER ON RENEWED MOTION TO DISMISS

Juan Eason ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional

Institution ("MacDougall-Walker") in Suffield, Connecticut, and proceeding *pro se*, sued

Connecticut Department of Correction ("DOC") officials for constitutional violations under 42

U.S.C. § 1983 in their individual and official capacities: Nurse Kelly R. Quinn, Nurse Henry

Mushi, Nurse Mariam Grant, Dr. Omprakash Pillai, Nursing Supervisor Tawanna Furtick, and

Dr. Monica Farinella. Compl., ECF No. 1 (Feb. 14, 2019). Mr. Eason alleged violations of the

Eighth Amendment's protection against cruel and unusual punishment, based on Defendants'

deliberate indifference to his serious medical needs; he seeks monetary, injunctive, and

declaratory relief. *Id.* ¶¶ 19–22.

In an Initial Review Order dated April 26, 2019, the Court dismissed the claims against

Nurse Furtick and permitted the Eighth Amendment claims to proceed against Nurse Quinn,

Nurse Mushi, Nurse Grant, Dr. Pillai, and Dr. Farinella (collectively, "Defendants") in their

individual capacities for damages and in their official capacities for declaratory and injunctive

relief. Initial Review Order, ECF No. 7 (Apr. 26, 2019).

1

Defendants have moved to dismiss Mr. Eason's Amended Complaint in its entirety. *See* Mot. to Dismiss, ECF No. 27 (Dec. 13, 2019) ("Defs.' Mot."); Am. Compl., ECF No. 26 (Nov. 12, 2019).

For reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations[1]

On April 5, 2018, Mr. Eason allegedly had been placed in the MacDougall-Walker infirmary. Am. Compl. ¶ 1. He had allegedly received a total knee replacement surgery nine days prior. *Id.* Mr. Eason allegedly informed Nurse Quinn, who was in the infirmary to give the inmates medication and insulin shots,[2] that he was "itching all over" and "may just be having an allergic reaction." *Id.* at ¶¶ 1, 3. Nurse Quinn allegedly accused Mr. Eason of faking his symptoms and stated that she was not going to call the on-call doctor for "just for some itch." *Id.* ¶ 2.

Approximately five hours later, while completing medication rounds, Mr. Eason allegedly informed Nurse Quinn that his itching was starting to get worse and spread to other parts of his body. *Id.* ¶ 5. Nurse Quinn then allegedly cursed at Mr. Eason and told him that he should stop "crying wolf." *Id.* ¶ 6. Nurse Quinn allegedly told Mr. Eason that he would not be provided with medication for anything that was bothering him. *Id.*

---

[1] All factual allegations are drawn from the Amended Complaint and, where appropriate, the original Complaint.

[2] Mr. Eason allegedly requires an insulin shot once a day. Am. Compl. ¶ 3.

Mr. Eason allegedly later noticed a rash developing on his thigh, and he asked to see another nurse. *Id.* ¶ 7. Mr. Eason allegedly spoke with Nurse Mushi about his medical problem, *id.*, but Nurse Mushi allegedly refused to turn the infirmary lights on to examine the rash and left the room, *id.* ¶ 8.

Later, on the third shift, Nurse Grant allegedly arrived where Mr. Eason was located, and Mr. Eason allegedly attempted to tell her about his now full-body rash. *Id.* ¶ 10. Nurse Grant allegedly responded by telling Mr. Eason she had been warned by the second shift nurse about his faking an itch in order to receive medication, and she thus refused to examine him. *Id.* ¶¶ 11–12. At that time, Nurse Grant allegedly refused to look at Mr. Eason's leg, arm, and back. *Id.* ¶ 12. Mr. Eason allegedly sat for two additional hours in "extreme pain" from the rash on his body that allegedly none of the nursing staff would examine. *Id.* ¶ 13.

When Nurse Grant allegedly returned to his location due to a call from another inmate, Mr. Eason allegedly greeted her with his shirt off and requested she look at "this stuff popping up all over his" body. *Id.* ¶ 15. Nurse Grant allegedly rushed out of the room and called the on-call doctor about Mr. Eason's condition. *Id.* ¶ 16. When Nurse Grant returned to Mr. Eason's location, Mr. Eason allegedly sat on the bed, waiting for relief from his pain. *Id.* ¶ 17.

On April 6, 2018, Mr. Eason allegedly woke up with problems breathing and his face puffed up. *Id.* ¶ 18. Mr. Eason allegedly went to the nurse's station where Dr. Pillai took a quick look at him. *Id.* ¶ 20. Dr. Pillai allegedly discontinued pain medication but never ordered that Mr. Eason "have any bloodwork or other test" administered to find out the cause of the breakout. *Id.* ¶ 21.

Nurses Quinn and Mushi allegedly never filled out any report about Mr. Eason's complaints regarding his medical condition. *Id.* ¶ 23.

Dr. Pillai allegedly issued an order for Mr. Eason to continue range of motion ("ROM") exercises as recommended by an orthopedic physical therapist; however, Mr. Eason allegedly did not have any range of motion exercises during his stay in the infirmary. *Id.* ¶ 24. The discharge instructions after Mr. Eason's surgery allegedly recommended that he perform range of motion exercises. *Id.* ¶ 25. Mr. Eason could not allegedly perform these exercises himself, and Dr. Pillai and Dr. Farinella both allegedly knew that he required such exercises. *Id.* ¶ 27. Dr. Pillai allegedly "never let anyone know what was prescribed for" Mr. Eason, and Dr. Farinella allegedly never checked his chart to see if there was "a new order for something that must be done before Mr. Eason could be discharged back to general population."[3] *Id.* ¶ 28.

On April 26, 2018, Mr. Eason allegedly had to go to the medical department for an equipment check, as he allegedly still needed a walker to assist with mobility. *Id.* ¶ 33. After Mr. Eason allegedly asked Nurse Michaud about his range of motion exercises, she allegedly informed him that he could no longer receive range of motion exercises, after he was discharged from the infirmary. *Id.* ¶ 33.

---

[3] Mr. Eason asserts that Defendants were all retaliating against him for filing a lawsuit against some of their colleagues in *Eason v. University of Connecticut Health Center*, No. 3:16-cv-1497 (VLB) (D. Conn. Sept. 2, 2016) (case closed August 18, 2017). *See* Am. Compl. ¶ 29. He cannot allege a plausible claim of First Amendment retaliation, however, on such wholly conclusory assertions. Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotations and citation omitted). Mr. Eason's allegations provide no suggestion that Defendants were even aware of his civil action alleged against their colleagues. *See Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *4 (D. Conn. Jan. 10, 2020) (dismissing retaliation claims where plaintiff had not alleged that defendant was aware that he had filed a grievance).

### B.     Attachments to the Amended Complaint

Mr. Eason has attached various portions of his medical record as exhibits to his Amended Complaint, which reflect the following with respect to Mr. Eason's body rash and his range of motion therapy after his knee surgery.

Discharge instructions from UCONN Health following Mr. Eason's surgery included a recommendation that Mr. Eason complete range of motion exercises. Am. Compl. at 15. On March 29, 2018, Dr. Pillai issued a medical order for Mr. Eason to continue range of motion exercises consistent with the orthopedic specialist's recommendation. *Id.* at 29. On April 4, 2018, during the 7 a.m. to 3 p.m. shift, a medical staff member at MacDougall-Walker noted on Mr. Eason's clinical record that Mr. Eason had a steady gait and had "completed ROM exercises w/o diff." *Id.* at 43.

On April 5, 2018, during the 11 p.m. to 7 a.m. shift, a medical staff member noted that at the start of the shift, Mr. Eason was "feeling itchy and verbalized that he was having a hard time not scratching[,]" had visible "raised patches" on his back and shoulders, and had expressed that his breathing was fine. *Id.* at 26. The record reflects that staff called Dr. J. Wright, who issued an order for Benadryl and other medications. *Id.* at 44.

On April 6, 2018, at 6:30 a.m., another staff member noted that Mr. Eason had indicated that the Benadryl helped with his itchiness (although his leg remained warm to the touch) and that he had had a restful sleep. *Id.* at 26. On that date, Dr. Pillai noted that Mr. Eason complained of "whole body hives" and upon examination, confirmed he had hives. *Id.* at 25. Dr. Pillai's note suggests a "possible drug allergy" and references discontinuation of certain pain medication. *Id.* Dr. Pillai ordered that Mr. Eason continue with his Benadryl medication and ordered other medications as well, including for Mr. Eason to receive the drug Gabapentin. *Id.* at 44.

On April 9, 2018, Dr. Pillai made another note to Mr. Eason's clinical record stating that Mr. Eason's hives were resolved. *Id.* at 45. Dr. Pillai noted that Mr. Eason may have had an allergic reaction to Codeine, as Mr. Eason has an allergy to the oxycodone Percocet.[4] *Id.* Dr. Pillai noted that Mr. Eason complained of ongoing pain, so he ordered that he resume taking Ibuprofen and Tylenol. *Id.*

On April 20, 2018, an orthopedic specialist recommended Mr. Eason complete "aggressive ROM to increase flexion." *Id.* at 30. On April 21, 2018, during the 7 a.m. to 3 p.m. shift, a medical staff member noted Mr. Eason had been encouraged to complete "ROM exercises as per" the orthopedic specialist's recommendation. *Id.* at 49.

According to a record entry dated April 24, 2018, on April 23, 2018, Dr. Farinella called the infirmary to discuss the current roster of inmates housed there, and a clinical record note dated April 23, 2018 shows that Dr. Farinella cleared Mr. Eason to return to general population. *Id.* at 50–51.

### C.    Procedural History

On February 14, 2019, Mr. Eason commenced this action by filing a Complaint as a *pro se* litigant. Compl.

On April 26, 2019, the Court issued its Initial Review Order, which dismissed the claims against Nurse Furtick and permitted the Eighth Amendment claims to proceed against Nurse Quinn, Nurse Mushi, Nurse Grant, Dr. Pillai, and Dr. Farinella in their individual capacities for damages and in their official capacities for declaratory and injunctive relief. Initial Review Order.

---

[4] The medical records indicate that Mr. Eason has an allergy to Percocet. *See* Am. Compl. at 14, 22, 40, 44.

On July 3, 2019, Defendants moved to dismiss the Complaint. Mot. to Dismiss, ECF No. 16 (July 3, 2019).

On September 17, 2019, Mr. Eason filed an objection to the motion to dismiss and a motion to amend. Obj., ECF No. 22 (Sept. 17, 2019); Mot. to Amend/Correct Compl., ECF No. 23 (Sept. 17, 2019).

On November 12, 2019, the Court denied without prejudice Defendants' motion to dismiss and granted Mr. Eason's motion to amend the complaint. Order, ECF No. 25 (Nov. 23, 2019). In so ruling, the Court noted "the proposed amendment asserts substantially similar claims of deliberate indifference against the same defendants" and that Defendants would "incur minimal prejudice if leave to amend [was] granted at this early stage in the proceedings." *Id.*

On November 12, 2019, Mr. Eason filed his Amended Complaint. Am. Compl.

On December 13, 2019, Defendants filed this motion to dismiss. Defs.' Mot.; Defs.' Mem. in Supp. of Defs.' Mot, ECF No. 27-1 (Dec. 13, 2019) ("Defs.' Mem.").

On January 23, 2020, Mr. Eason filed his response thereto. Pl.'s Opp'n to Defs.' Mot., ECF No. 30 (Jan. 23, 2020).

Defendants did not file a reply brief.

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification ... to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs.,*

8

*Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 473 (2d Cir. 2006)); *cf. Teichmann v. N.Y.*, 769 F.3d 821, 825 (2d Cir. 2014) ("Although we liberally construe Teichmann's *pro se* amended complaint, we still require that he plead facts sufficient to state a claim to relief that is plausible on its face." (internal quotation marks and citations omitted); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("Because Fowlkes appeared *pro se* before the District Court, he is 'entitled to special solicitude,' and we will read his pleadings 'to raise the strongest arguments that they suggest.'. . . At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Triestman*, 470 F.3d at 477; *Twombly*, 550 U.S. at 570)).

## III.   DISCUSSION

Defendants argue that they did not violate the Eighth Amendment by acting with deliberate indifference to Mr. Eason's medical needs. Alternatively, they claim entitlement to qualified immunity.

### A.   Eighth Amendment Claims

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Id.* at 104 (internal quotation marks and citation omitted). The Supreme Court explained that "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by

prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

To state a claim for deliberate indifference to a serious medical need, a plaintiff's claim must satisfy both objective and subjective elements. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). First, the alleged deprivation "must be, in objective terms, sufficiently serious." *Id.* (quotations and citations omitted). "Second, the charged official must act with a sufficiently culpable state of mind." *Id.*

Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To satisfy the second subjective prong, a prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Mere negligent conduct does not constitute deliberate indifference. *See Salahuddin*, 467 F.3d. at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely

negligent."); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

When an inmate brings an Eighth Amendment deliberate indifference claim based on "a temporary delay or interruption" of treatment, the court's objective "serious medical need inquiry can take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir. 2003). The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* Relevant to the subjective component of the Eighth Amendment analysis, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See also Salahuddin,* 467 F.3d at 280.

### 1.  Alleged Deliberate Indifference by Nurses Quinn, Mushi, and Grant

Defendants maintain that Mr. Eason has failed to allege that Nurse Quinn, Nurse Mushi, and Nurse Grant acted with conscious disregard of his serious medical need. Defs.' Mem. at 10–12. Defendants argue that Nurses Quinn, Mushi, and Grant are only alleged to have ignored Mr. Eason's claim of itchiness, or at most a body rash or hives; thus, Defendants assert that Mr. Eason has not alleged[5] serious "conditions of urgency" that satisfy the objective component of the Eighth Amendment analysis. *Id.*

---

[5] Defendants have cited to numerous cases ruling on summary judgment after review of the evidence that a plaintiff's particular skin condition did not present a serious medical condition: *Price v. Reilly,* 697 F. Supp. 2d 344, 359 n.14 (E.D.N.Y. 2010) (no evidence that rash and/or itching was an objectively serious condition); *Reyes v. Wenderlich,* No. 14-cv-6338-FPG, 2018 WL 1210892, at *8 (D. Conn. March 7, 2018) ("biopsy revealed that the condition was not serious and that it merely produced itching"); *Ahlers v. Kaskiw,* 9:12-CV-501 GLS/ATB, 2014 WL 4184752, at *2 & *10 (N.D.N.Y. Aug. 21, 2014) (insufficient evidence that "persistent itchy rash" constituted serious medical condition); *Benitez v. Ham,* No. 9:04-CV-1159, 2009 WL 3486379, at

The Court disagrees.

While allegations of an itchy or dry skin condition alone may be insufficient, in order to state an objectively serious medical condition, Mr. Eason need not demonstrate that he has experienced "pain that is at the limit of human ability to bear or that his or her condition will degenerate into a life-threatening one." *Brock*, 315 F.3d at 163 (reversing district court's determination that pain associated with a scar was not objectively serious where plaintiff had shown pain was "uncomfortable and annoying" but not "extreme" and scar did not present a risk of serious harm); *cf. Lewal v. Wiley*, 29 F. App'x 26, 29 (2d Cir. 2002) (affirming dismissal on basis that plaintiff had failed to state that "persistent rash" was a "serious medical condition"); *Liner v. Fisher*, No. 11-CV-6711 PAC/JLC, 2013 WL 3168660, at *12 (S.D.N.Y. June 24, 2013) (on motion to dismiss, holding skin conditions, including itchy erratic dryness and peeling, did not constitute serious medical condition).

Here, Mr. Eason has alleged an itchy rash condition on his whole body, the potential of an allergic reaction, and a well-documented allergy to Percocet. Am. Compl. ¶¶ 14, 22, 40, 44. Moreover, Mr. Eason has alleged that he suffered from pain during the period of time that Defendants ignored his requests for medical assistance. *See id.* ¶¶ 13, 17.

Drawing "all reasonable inferences" in Mr. Eason's favor, as required in ruling on a motion to dismiss, *see Interworks Sys. Inc. v. Merchant Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010), Mr. Eason has alleged a serious medical condition by alleging that he was an individual in the infirmary after knee surgery with a potential allergy to pain medication.

---

*11 (N.D.N.Y. Oct. 21, 2009) ("[T]he evidence shows that Plaintiff suffered from a severe body itch. While this condition was undoubtedly unpleasant, it simply does not rise to the level of an Eighth Amendment violation."); *Swindell v. Supple*, No. 02-CV-3182 (RWS), 2005 WL 267725, at *7 (S.D.N.Y.  Feb. 3, 2005) ("excessive itching, scratching, soreness  from scratching, and cracked skin" which caused pain and embarrassment was "not of such an urgent and substantially painful nature as would satisfy the objective prong of the deliberate indifference standard"). *See* Defs' Mem. at 10–11 (collecting cases).

As to the subjective component, Defendants argue that it is implausible that Mr. Eason experienced deliberate indifference to his medical needs by Nurses Quinn, Mushi, and Grant while he was housed in the infirmary. Defs.' Mem. at 11. Defendants emphasize that less than twenty-four hours after Mr. Eason complained of his skin condition, Nurse Grant called the on-call physician, who prescribed medication that enabled Mr. Eason to sleep. *Id.* at 11–12.

In reviewing a motion to dismiss, the Court must construe[6] the complaint "most liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Mr. Eason's Amended Complaint suggests that Nurses Quinn, Mushi, and Grant ignored his requests for medical assistance for his developing rash and that they refused to consider or even look at his skin despite the potential that he was having an allergic reaction. *See* Am. Compl. ¶¶ 1–13.

Moreover, his allegation of waking up on April 6, 2018, with trouble breathing raises an inference that the delay in treatment may have exacerbated his underlying condition and subjected Mr. Eason to risk of serious harm. *See id.* ¶ 18. Further, he alleges that he suffered pain and that he finally received medical attention from Nurse Grant after he ensured that she would see his skin condition by having his shirt off when she returned to his area to see another patient. *Id.* ¶ 13.

"Courts have declined to dismiss deliberate-indifference claims as a matter of law where plaintiffs have alleged a delay in medical treatment causing substantial pain, even when the injuries alleged were not life-threatening and the delay was relatively brief." *Laster v.*

---

[6] Mr. Eason's opposition mostly relies on his Amended Complaint and attached documentation, which are incorporated therein. *See* Fed. R. Civ. P. 10 (c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

*Mancini,* No. 07 Civ. 8265 (DAB), 2013 WL 5405468, at *21 (S.D.N.Y. Sept. 25, 2013); *see also Vines v. McCrystal*, No. 3:18-cv-1432 (MPS), 2018 WL 6050896, at *4 (D. Conn. Nov. 19, 2018). Construed most liberally, Mr. Eason's allegations state plausible claims that Nurses Quinn, Mushi, and Grant acted with deliberate indifference to his serious medical need related to his skin condition.

Accordingly, the Court will not dismiss the deliberate indifference claims against Nurse Quinn, Nurse Mushi, and Nurse Grant, but later will consider their liability under the Eighth Amendment on a motion for summary judgment.

### 2. Dr. Pillai's Alleged Deliberate Indifference Regarding Mr. Eason's Skin Condition

Defendants argue that Mr. Eason's "allegations, in conjunction with his attached records, fail to sufficiently support a claim that Dr. Pillai was deliberately indifferent" to his medical needs. Defs.' Mem. at 13.

The Court agrees.

Mr. Eason alleges that Dr. Pillai took a quick look at him, discontinued his pain medication, and never ordered that Mr. Eason "have any bloodwork or other test" administered to find out the cause of the breakout. Am. Comp. ¶¶ 20–21. Thus, Mr. Eason's Eighth Amendment claim appears to challenge Dr. Pillai's failure to order bloodwork or other tests to determine the cause of his skin condition. *Id.* ¶ 21. Notably, Mr. Eason does not allege that Dr. Pillai failed to provide him any treatment, and the attached medical record—submitted by Mr. Eason with his Amended Complaint, and thereby incorporated into his pleadings—indicates that Dr. Pillai provided detailed and appropriate treatment to resolve Mr. Eason's skin condition. *See* Am. Compl. at 25 (clinical record indicating that on April 6, 2018, Dr. Pillai noted that Mr. Eason complained of "whole body hives" and upon examination, confirmed he had hives; Dr.

14

Pillai also suggested a "possible drug allergy" and references discontinuation of certain pain medication); *id.* at 44 (physician's order record indicating Mr. Eason's Percocet allergy and Dr. Pillai's order on April 6, 2018, for Mr. Eason to continue with Benadryl as well as a list of other medications with dosage and timing for administration); *id.* at 45 (clinical record notation on April 9, 2018 by Dr. Pillai that Mr. Eason's hives were "resolved," that he was "allergic to codeine," and prescribing additional drugs for Mr. Eason's "ongoing pain"); *see also* Fed. R. Civ. P. 10 (c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (noting that consideration of a complaint is limited "to the factual allegations in [the] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

Dr. Pillai's failure to provide Mr. Eason with diagnostic tests represents, at most, negligent conduct that is not actionable under the Eighth Amendment. *See Chance*, 143 F.3d at 703 ("[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." (internal quotation marks and citation omitted)). Likewise, Mr. Eason's disagreement with Dr. Pillai about his medical needs is not sufficient to state a plausible claim that Dr. Pillai is liable for an Eighth Amendment violation. *See id.* ("[M]ere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an

Eighth Amendment violation."); *Hathaway*, 37 F.3d at 70 ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors."); *see also Grays v. McGrain*, 333 F. Supp. 3d 225, 234 (W.D.N.Y. 2018) (citing cases finding disagreement with treatment insufficient to establish basis of Eighth Amendment violation).

Accordingly, the Court will dismiss the deliberate indifference claim against Dr. Pillai based on his treatment of Mr. Eason's skin condition.

### 3. Dr. Pillai and Dr. Farinella's Alleged Deliberate Indifference Regarding Mr. Eason's Need for Range of Motion Exercises

Mr. Eason alleges that Dr. Pillai and Dr. Farinella acted with deliberate indifference by depriving him of access to range of motion exercises necessary for his rehabilitation after knee surgery. Am. Compl. ¶ 10. He also alleges that Dr. Pillai violated his Eighth Amendment rights by depriving him of access to a physical therapist and by interfering with and failing to carry out treatment ordered by another medical official. *Id.* ¶ 11. He asserts that due to Dr. Pillai's and Dr. Farinella's acts or lack of thereof, he struggles with his walking, balance, and gait. *Id.*

Defendants first argue that Mr. Eason has failed to allege the requisite components of his Eighth Amendment claims, namely, (1) that the range of motion therapy represents an objectively serious medical need, and (2) that either Defendant was personally involved in the Eighth Amendment violation by acting with conscious disregard of his medical need. Defs.' Mem. at 15–18.

Defendants assert that a physical therapy recommendation, without more, does not constitute a serious medical need. *Id.* at 15 (citations omitted).

The Court disagrees.

A failure to provide for physical therapy after surgery may present a serious deprivation. *Redd v. Garell*, No. 18 CV 9436 (VB), 2020 WL 1189491, at \*6 (S.D.N.Y. Mar. 12, 2020) (six-month delay in providing physical therapy after spinal surgery that had been recommended by surgeon and provided was objectively serious deprivation). Thus, construed most favorably to Mr. Eason, the allegations state that he had serious medical need for range of motion therapy after his knee surgery.

Defendants maintain further that Mr. Eason has not raised an inference that either Dr. Pillai or Dr. Farinella should be responsible for the alleged failure to complete range of motion therapy. Defs.' Mem. at 17.

The Court agrees, in part.

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal citations omitted). "[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). To demonstrate personal involvement of a supervisory official, a plaintiff is required to plead that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[7]

Mr. Eason's allegations against Dr. Pillai may be construed most broadly to assert that Dr. Pillai knew of Mr. Eason's need for range of motion therapy but failed to ensure that he received or completed the required therapy while he was in the infirmary. Even construed liberally, however, Mr. Eason's allegations against Dr. Pillai do not state a claim of an Eighth Amendment violation, because Mr. Eason has not established that Dr. Pillai was aware of a substantial risk that Mr. Eason would suffer serious harm as a result of his conduct. *See Salahuddin*, 467 F.3d at 280 ("Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (citations and internal alterations omitted)). The present record shows that Dr. Pillai ordered the range of motion therapy for Mr. Eason. *See* Am. Compl. at 29. Although Mr. Eason alleges that Dr. Pillai never let anyone know what was prescribed for him, *see id.* ¶ 28, at least one entry in the medical record reflects that Mr. Eason engaged in range of motion therapy while he was housed in the infirmary, *id.* at 49. Mr. Eason's allegations do not suggest that Dr. Pillai was aware that Mr. Eason was not receiving or had not completed the therapy ordered, and thus do not suggest that he consciously disregarded the risk posed to Mr. Eason due to the lack of therapy.

Consequently, because there is no inference that Dr. Pillai acted with conscious disregard to Mr. Eason's need for therapy, the Court will dismiss the Eighth Amendment claim against Dr. Pillai based on Mr. Eason's alleged lack of therapy.

---

[7] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Without further Second Circuit guidance on this issue, however, the Court assumes for purposes of ruling on this motion that the categories outlined in *Colon* remain valid.

As to Dr. Farinella, Mr. Eason's allegations are sparse and not entirely clear. Construed most broadly, his allegations assert that Dr. Farinella discharged him without considering all of the orders in his chart. *Id.* ¶ 28. Mr. Eason, however, has not alleged that Dr. Farinella was aware of his need to complete range of motion therapy or thus acted with a conscious disregard of that serious medical need prior to discharging him from the infirmary. At most, Mr. Eason suggests that Dr. Farinella acted negligently by discharging him without a review his chart for new orders that required completion prior to discharge. As previously noted, however, negligent conduct does not give rise to an Eighth Amendment claim absent the defendant's conscious disregard of the plaintiff's serious medical need. *See Chance*, 143 F.3d at 703.

Accordingly, because Mr. Eason has not alleged facts indicating the Dr. Farinella acted with a conscious disregard to his serious medical need, the Court will also dismiss the Eighth Amendment claim against her.

### B.     Qualified Immunity

Defendants contend that qualified immunity shields them from liability for their conduct. Defs.' Mem. at 18. Because the Court has already held that Mr. Eason has failed to state plausible claims of Eighth Amendment violations against Dr. Pillai and Dr. Farinella, the Court's consideration of qualified immunity is limited to the Nurses Quinn, Mushi, and Grant.

 Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken— decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v.*

*Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of N.Y.,* 612 F. 3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1867 (2017). Therefore, this Court may first ask whether it was objectively reasonable for any of the defendants to believe their conduct was not unlawful at the time. *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015). Qualified immunity does

not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Court has concluded that Mr. Eason has alleged plausible Eighth Amendment deliberate indifference claims against Nurse Quinn, Nurse Mushi, and Nurse Grant. The Eighth Amendment clearly proscribes deliberate indifference to the serious medical needs of prisoners whether manifested by denial, delay of, or interference with, medical treatment. *See Estelle,* 429 U.S. at 104-105, ("[D]eliberate indifference to serious medical needs of prisoners . . . is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. (footnotes and citations omitted)).

Accordingly, the Court will deny the motion to dismiss on the basis of qualified immunity as to Nurses Quinn, Mushi, and Grant.

### C.      Declaratory Judgment Claim

In his Amended Complaint, Mr. Eason seeks a declaratory judgment against Defendants stating that they have violated his rights. Am. Compl. at 11. Defendants argue that this request for a declaratory judgment must be dismissed. Defs.' Mem. at 18–19.

The Court agrees.

In *Ex parte Young*, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. 209 U.S. 123, 155–56 (1908); *see also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from

violations of federal law."). This exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

Accordingly, the Court will dismiss Mr. Eason's request for a declaration that Defendants violated his rights.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' renewed motion to dismiss.

The Court **DISMISSES** the Eighth Amendment claims against Dr. Pillai and Dr. Farinella as well as the claim for a declaratory judgment.

The Eighth Amendment claims against Nurse Quinn, Nurse Mushi, and Nurse Grant in their individual capacities for damages remain.

Because the Court has concluded that Mr. Eason's amended allegations against Dr. Pillai and Dr. Farinella are not plausible Eighth Amendment claims, the Court will dismiss these claims with prejudice and without affording Mr. Eason an additional opportunity to amend.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of June, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE